Mr. Grimes. Good morning. May it please the court. We're here today on an appeal of a and our position is that there were genuine material issues of fact that should be determined by a jury. One of the significant areas that we think should be tried by a jury has to do with Appellant Miller's reassignment to a new with significantly different responsibilities, job status, and job location. Mr. Miller was a detective sergeant in the St. Joseph County Sheriff's Department. There came a time when Detective Miller ran for sheriff of the department. The defendant, Grezgorik, also ran for sheriff. During the period of the campaign, Mr. Miller and then-captain Grezgorik met and talked about the campaign. Officer Miller asked the captain Grezgorik to withdraw from the campaign, support him, and that he would essentially return the favor once his term was up. There was a question about the delay in getting campaign materials and the way that that wound up was that there was no agreement to the idea proposed by Officer Miller. After that, the election was held and Captain Grezgorik was elected. Following that, Officer Miller, Detective Miller, called Captain Grezgorik, indicated to him his congratulations for for winning. Mr. Grimes, I don't want to interrupt you, but can you point to anything on the record that suggests an adverse employment action? Yes, and I was getting to that. Thanks, Judge. The adverse employment action occurred when, after Grezgorik was elected, but before he was sworn in, he met with an officer that he apparently, and did, appoint to head up the Detective Bureau. That was, he became a Lieutenant Timmons. In that meeting, called by Grezgorik, Grezgorik asked him, if you could remove from your, from the Detective Bureau, two people, who would they be? And Timmons said, Miller and Guest. Miller and Guest were the only two black detectives in the Bureau. But wasn't Mr. Miller returned back to the Bureau after he completed the gun project? He was returned back to the Bureau after he filed a lawsuit. He was, and that would encompass the question that the court just asked. So yes, but our position is that he would not have been returned back if he had not filed a lawsuit in this particular case. The significance of what happened to Officer Miller is that it was the sheriff who recommended that he be reassigned. Our position is that there was no basis for that. Officer Miller had no problems with the performance of his duties. Was Miller demoted? No, he was not demoted. If you, if you talk in terms of demotion as to reduction in salary, benefits, etc., no. But what, what, what did happen is that he was reassigned to the property room of the given a chance to leave the property room for the family violence section and he, and he declined that? That is true for the reason that, that he stated, relative to the person who wanted him, who, who was the head of that department at the time. Miller's understanding was, and it was confused, that that wasn't the same person that was there. Well, that's not on the record. We're not sure that the that person was still there when the transfer was offered to Mr. Miller. That's not, that's not in the record, is it? Oh, well, I, it was argued. It was argued in the brief by, by the... Well, he either was there or he wasn't there. The, the person, and I would agree with that. And, and, and, and so I'm not arguing that point because it didn't make any difference. Well, are you saying then that if he was transferred back to the Detective Bureau because of a lawsuit, that the transfer to the property room was an adverse employment action? Yes, that's what we argue, yes. No diminution in pay? Yes, but that's not the only basis upon which you determine that, that question. Well, what's, I don't understand, why, why was being sent to the property room a, a demotion of sorts, even though it wasn't officially? Well... What difference does it make? Especially since he was given a chance to leave and, and join the Family Violence Unit, so... Not as a detective. He wasn't given the right to leave. Why would he leave a job that he already has as a detective? Well, but you said he didn't like the basement job. That wasn't his job. Pardon? That wasn't his job. That wasn't his job description while he was in the basement, in the property room. Well, I don't understand. You, you said he wasn't demoted in the sense of having his salary reduced. He was moved to a different job. Yes. Well, why, why is that discrimination? It's, the Police Department has to move people around and why would being the Family Violence Unit be inferior to what he was doing before he started getting moved around? First of all, what we're saying is, and what we're arguing is, that the transfer, the reassignment from detective to the property room was a materially adverse employment action. That's, that's the his job description changed. The, the person that was already in the property room was a civilian who was in control, control of the property. Was this in the record? Yes. That there was, that there was a civilian? Yes. And the job description of that civilian is also part of the record. Let me ask you this, Mr. Grimes. Didn't he accept the position? No. Now, I know he says that he felt he was some kind of a demotion to speak up and say, I don't want that job, this isn't right. Didn't it, I think the record is clear that he accepted it, did he not? No, it's not clear that he accepted it. I see. How can a person who's been a detective for 31 years, all of a sudden, agree to go to the property room and count guns? Is it your contention that factually he disagreed with the assignment? No question about it. He was never asked if he accepted it. I see. Why didn't he then accept to transfer to the family violence section? Because he was a detective and that would have meant changing his job, which he already had. No, his job had already changed when he was put in the basement. Now, why wouldn't he want to leave the basement and join the family violence unit? Well, Judge Posner, I respectfully disagree with you. His job didn't change. Supposedly, this was a quote-unquote, where he was transferred and reassigned to the property room to count guns. Not that his job had changed or that he was no longer a detective. He was a detective counting guns after the election. So, if he was still a detective, what's his complaint? The complaint is the reassignment materially changed his job. He was reassigned after he completed the job, though, right? No, he wasn't reassigned. He was reassigned after he filed a lawsuit. He what? He was reassigned after he filed a lawsuit. Or he was allowed back to, and they started giving him cases again. While he was away, he wasn't given cases in the detective bureau. After the discussion with Decker and the other gentleman about the family service position, and after he had filed lawsuits, they start then giving him cases again as a detective. So, he was in the property room counting guns while he was a detective and not getting any cases. And he finished that job, right? No, he didn't finish the job, because there was the other person that was there whose job it was to complete it in the first place. He didn't complete the job, because if you look at the documents and the record, he had nothing to do over there with the job. With the counting guns. And the thing was that the only thing that he did over there was to make a determination as to whether there were any pending cases relative to those guns that were there. He was put there as punishment in this situation. People started calling him, how's counting guns? How does it feel to be in the basement? All of that nonsense. Thank you, Mr. Brown. Thank you, judges. Mr. Agostino? Good morning. May it please the court, counsel. To correct a few things about the record, Miller was asked to go into the, to take over the gun project, to destroy guns that had been building up for a long time, over a thousand guns, and it was an important project. Miller had the rank of sergeant. There was two other sergeants in the department. One sergeant was in charge of maintaining the child molester database, and the other sergeant was in charge of maintaining the child molester database. Randy Capps was the person that Sheriff Chris Gorick asked to take over the detective department, and there were discussions before, after election, and before the start of the term, where Capps asked and had discussions with Miller about taking on this job. It was Randy Capps, not Regis Timmons, who asked Miller to take over this job. Capps wanted a sergeant in there because he would have to interact with the state police, and he felt having a person of rank would be beneficial. It was a temporary assignment that lasted about four or five months. In September of the year the assignment was made, the project was completed, and Miller went back to his regular duties. Again, I asked Mr. Grimes about the record. Is that what the record shows? What does the record show? Yes, and there's an affidavit of Randy Capps that sets that out, that's in the record. Is there counter evidence in the record? I'm not aware of any. Does the record show that a lawsuit was filed by Mr. Miller prior to his return from the property room? I do not know what the timing of that is, but the record does show that in the affidavit of Randy Capps that when the project was completed, that's when he was returned to the... Do we know what that date is? I can take... Oh, that's right, I don't want to interrupt your argument. I think it was in September of 2011. And the lawsuit, according to the plaintiff, was filed before that. I think a Title VII charge was filed before that. I don't know if the complaint was actually filed before that. But there's no evidence in the record to contradict what Randy Capps says as to why Miller was sent back into his regular duties in the detective bureau. Do we know whether the same head of the family unit was there that Mr. Miller believed had showed some animosity towards him? We know that outside the record it was someone different. We don't know that inside the record. I see. And so the other thing that's missing from Mr. Miller's case is that whether or not this was an adverse decision or not, there's no evidence at all in the record to show that race, political activity, or any other impermissible category motivated the decision. Randy Capps had an affidavit which says why he asked Miller to go into the property room. With respect to the other claims, we have the sheriff's explanation. There's no deposition testimony to contradict any of that. No impermissible reason was relied upon at all. They're all legitimate reasons, and there's nothing to contradict that. And that's why I think the district court said that the evidence wholly failed to show any evidence of discrimination. How would you respond to the question as to whether or not the record shows any adverse employment action? We do not believe it was adverse because there was no change in pay, no change in rank, no change in hours. Everything remained the same. So there was nothing adverse about that. There was one line, I think, by one witness that talked about, I think, that there was some ridicule of Miller for being in that department, but I think that was jesting between comrades in the department and not anything from a supervisor. There was nothing derogatory from a supervisor. And, in fact, the record's pretty explicit. Again, the affidavit of Randy Capps, the head of the Detective Bureau, indicating that there was nothing mentioned about this position being in any way a demotion. And Mr. Miller, in his deposition, agreed that nothing was ever said to him about this being a demotion. I'm sorry. Well, you indicated that the work had been completed with regard to counting the guns, right? Yes. And what's that based on? Is there evidence showing that? Yes. There's two affidavits. There's a deposition testimony of Bambi Knauss, who was the clerk in the evidence room that confirmed that. The sheriff confirmed that in his affidavit, and Randy Capps confirmed that in his affidavit. And what happened after that? Miller reported back into the detective office and picked up handling of cases as he had been before. Is he still doing that? He's retired. He's retired? Yes. And he went back to the Detective Bureau, and did he do the same type of work he had done before? Yes, yes. And there's evidence in the record showing that? Yes. So based on the absence of any evidence to support discrimination, we'd ask the court to affirm the trial court ruling. Thank you, Mr. Agostino. Mr. Grimes, your time has expired, but if you'd like another minute, you may have it. I want to read to you, and we go to page 32 of the appellant's brief, item 35 and 36. While Miller was assigned to the property room, he served as a detective sergeant senior for the St. Joseph County Police Department, responsible for the investigation of crimes against persons and or property, enforcement of the laws of the state, protection of county residents and their property, and supervising employees within the prescribed chain of command with full-time status. 36. During Miller's time assigned to the property room, Bamby Canouse's job title was evidence and property officer. In the St. Joseph County Investigative Division, St. Joseph County Jail, as evidence and property officer, Canouse was responsible for receiving, processing, securing, and maintaining accurate records of criminal evidence and unclaimed property, including contraband, et cetera. With regard to caps, in terms of why Miller was sent to the property room, we objected to the affidavit where caps, not talking to Miller, talked to other people in the department about Miller's organizational capacities or capabilities, and that was the basis on which Grezgorik, through caps, reassigned Miller to the property room to count guns. Thank you. Okay, thank you very much, both counsel. Next case for argument...